O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEYED HOSSEIN MIRI,

Petitioner,

v.

PAMELA BONDI et al.,

Respondents.

Case No.: 5:26-cv-00698-MEMF-MAR

**ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 3]**

Before the Court is the Motion for Temporary Restraining Order and Motion Preliminary Injunction filed by Petitioner Seyed Hossein Miri. Dkt. No. 3 ("Motion"). For the reasons stated herein, the Application is GRANTED IN PART: the Court grants the Temporary Restraining Order, and issues an Order to Show Cause why a Preliminary Injunction should not issue, but does not grant a Preliminary Injunction at this time.

/ / /

/ / /

/ / /

/ / /

1

## I.      Background

### A.  Factual Background[1]

Petitioner Seyed Hossein Miri is a citizen of Iran, who has applied for asylum based his conversion to Christianity and is currently in the custody of the DHS at the Adelanto Detention Facility in Adelanto, California. Petition ¶ 22.

Miri has lived in the United States for nearly ten (10) years, having entered the country on September 4, 2016 with a visitor's visa, accompanied by his wife and minor son. *Id.* ¶ 2. On January 26, 2017, Miri's wife filed for asylum in the United States, and he was included as a derivative beneficiary of that application. *Id.* Miri attended all scheduled interviews and appointments in connection with his asylum application. *Id.* ¶ 3. Miri's wife's asylum application remained pending with the U.S. Citizenship and Immigration Services' (USCIS) asylum office for over six years, during which time Miri was issued employment authorization and permitted to remain in the United States while awaiting adjudication of the application. *Id.*

Ultimately, the USCIS asylum office referred the matter to the immigration court for further proceedings on March 25, 2024. *Id.* ¶ 4.

Miri subsequently filed his own, separate I-589 application for asylum with the immigration court. *Id.* ¶ 5. His application is based on his fears of harm in Iran considering his conversion to Christianity. This application remains pending with the Immigration Court, as does the application of Miri's wife. *Id.*

On September 23, 2025, as Miri was driving home after dropping his minor son off at school, his car was surrounded by Department of Homeland Security (DHS) officials and he was taken into immigration custody without incident. *Id.* ¶ 6. DHS records confirm that Miri has no criminal history, and that he resides with his wife and son. *Id.*

Miri then filed a motion for a bond hearing documenting, among other things, the validity of his claim for asylum based on his conversion to Christianity, including extensive evidence of persecution of Christian converts in Iran; his intention and ability to reside with his wife and child as

---

[1] Unless otherwise indicated, the following factual background is derived from Miri's Petition for Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

he had been prior to his detention; the fact that his wife is employed with valid employment authorization; evidence of income tax filings; and the fact that his wife suffered a miscarriage after his detention. *Id.* ¶ 7.

On November 19, 2026, the Adelanto Immigration Court conducted a hearing on Miri's request for bond. *Id.* ¶ 8. Miri was not present at the hearing but was represented by counsel. *Id.* During the hearing, the DHS argued that Miri was both a flight risk and a danger to the community, characterizing danger to the community as the DHS' "stronger" argument. *Id.* ¶ 9. In support of this argument, the DHS stated that Miri's mandatory military service in the Iranian military from 1998 to 2000 – service that was disclosed on Miri's application for a non-immigrant visa which was approved by the Department of State – made him a danger to the community. *Id.* DHS cited the Encyclopedia Britannica, arguing that the Iranian military has committed human rights abuses. *Id.*

The DHS additionally relied on the fact that Miri obtained a waiver of the USCIS filing fee for two applications for employment authorization to argue that he should not be granted bond. *Id.* ¶ 10. The fee waiver requires showing Miri received a means-tested benefit. *Id.* The DHS noted that Miri obtained these fee waivers while living at homes which, per the Zillow real estate website, had estimated monthly rents of approximately $7,000 and $4,000, respectively. *Id.* According to DHS, this was conclusive evidence that Miri made misrepresentations with respect to his income to obtain fee waivers. *Id.* The DHS thus argued that Miri would not be found credible and his application for asylum and related relief would be denied. *Id.*

Based on Miri's mandatory military service and the allegations of misrepresentation, DHS argued that Miri was both a flight risk and a danger to the community. *Id.* ¶ 11. Miri argued that he qualified for the fee waivers that he obtained based on his receipt of Medi-cal, and that, whatever policy concerns the DHS may have regarding eligibility for fee waivers, no misrepresentations were made in connection with his requests. *Id.* ¶ 12. He additionally argued that his mandatory military service in the Iranian military occurred nineteen years before the Revolutionary Guard was designated as a terrorist organization and could not be used to deny his application for asylum and related relief. *Id.* Miri additionally highlighted his family ties, hardship to his wife and child resulting from his detention, his lack of criminal history and cooperation with DHS officials when he

was detained as well as the strength of his application for asylum, as factors weighing in favor of bond. *Id.* ¶ 13.

The Immigration Judge denied bond. *Id.* ¶ 14. The written memorandum states only "the respondent failed to meet his burden to establish that he is not a flight risk." *Id.* The Immigration Judge's verbal reasoning during the hearing, in its entirety, is that "the court is going to deny the request for bond on the basis of flight [risk]. The court is not going to reach a determination on danger given the flight finding. Too many red flags here, counsel. I'm not making any kind of judgment as to the strength of relief. Perhaps it gets granted, perhaps not. I really don't know at this point. But there are a number of factors working against the respondent as it relates to the flight risk. So, the court has denied the request for bond on that basis." *Id.* ¶ 15.

Miri remains in DHS custody. His next hearing is a preliminary hearing set for March 3, 2026. *Id.* ¶ 16. During his detention, which has now exceeded four months, Miri has experienced a significant decline of his health. *Id.* At his initial apprehension in September, he raised his medical concerns to DHS officials, who noted that "subject does not claim good health." *Id.*

After his detention Miri was sent to the hospital for emergency treatment after experiencing complications due to his fluctuating blood sugar. *Id.* ¶ 17. More recently, Miri experienced severe pain and a serious infection which once again necessitated his hospitalization beginning on or about January 27, 2026. *Id.* On or about February 11, 2026, Miri underwent surgery for hernia, and will require an additional surgery to address hemorrhoids. *Id.* ¶ 18. Miri remains hospitalized as of the date of filing this Petition. *Id.* ¶ 19.

Miri's wife has been unable to consistently communicate with him, with the hospital refusing to provide any information to her. She has resorted to requesting casework assistance from her local representative to obtain information about her husband. *Id.* ¶ 20. Miri has told his wife, "If I die, ICE and Adelanto are responsible for my death." *Id.* ¶ 21.

### B.  Procedural History

On February 13, 2026, Miri filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Petition. Miri also filed a Motion for Temporary Restraining Order and Motion for Preliminary Injunction on February 9, 2026. Motion.

On February 17, 2026, the Court ordered the Respondents to file a response to the Application by February 20, 2026, at 5pm. Dkt. No. 5. The Court's Order also ordered Miri to file a Reply by February 23, 2026, at 5pm. *Id.* On February 20, 2026, Respondents filed an Opposition. Dkt. No. 8 ("Opposition"). On February 23, 2026, Miri filed a Reply. Dkt. No. 9 ("Reply").

On February 26, 2026, the Court held a hearing on the Motion.

## II.   **Applicable Law**

### A. **Preliminary Injunctions**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

/ / /

/ / /

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

6

**III.    Discussion**

**A. Miri's Application Is Procedurally Proper.**

As a threshold matter, Miri's Application is procedurally proper.

Federal Rule of Civil Procedure 65(b)(1) states that a Court may issue a temporary restraining order without notice to the adverse party if movant provides "the movant's attorney [written certification of] any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Local Rule 65-1 requires: A party seeking a temporary restraining order ("TRO") must submit an application, a proposed TRO, a declaration setting forth the facts and certification required by [Fed. R. Civ. P.] 65(b)(1)(A) and (B), and a proposed order to show cause why a preliminary injunction should not issue. C.D. Cal. L.R 65-1.

Miri asserts that counsel emailed Respondents on February 12, 2026, notifying Respondents that Miri "intended to file" the Motion. Motion at 1; Reply at 2. Respondents contend that Miri's Motion is procedurally flawed because Miri failed to comply with Local Rule 65. Opposition at 5-7. In particular, Respondents claim that Miri did not provide a declaration setting forth specific facts that clearly show "immediate and irreparable injury, loss, or damage will result" "before [Respondents] can be heard in opposition.[2] *Id.* Respondents' arguments are unavailing as Rule 65(b) applies where the nonmovant has *not* received notice. *See* Fed. R. Civ. P. 65(b). Here, Miri gave notice to Respondents on February 12, 2026, prior to filing the Motion. Motion at 1. Further, the Motion and Petition set forth Miri's arguments as well as supporting evidence including the bond hearing transcript, Dkt. No. 1-2, and correspondence as to Miri's medical condition, Dkt. No. 3-9.

---

[2] Respondents contend that Amy Lenhert's Declaration, Dkt. No. 1-9, include statements which Lenhert lacks personal knowledge because she never met with Miri. Opposition at 5-6. The Court disagrees. Under Federal Rule of Evidence 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Here, Lenhert directly communicated with Miri's family due to Miri's hospitalization, Dkt. No. 1-9 ¶¶ 2-3; Reply at 2, and the bond hearing transcript substantiates the circumstances alleged in the Petition and Motion, *see* Dkt. No. 1-2. Lenhert does not appear to be speculating or guessing as to Miri's situation. Rather, she is pleading on information received from individuals closely related to Miri's circumstances. Reply at 2-3 In sum, Lenhert has personal knowledge of Miri's allegations.

Reply at 3-4. And Respondents had the opportunity and did respond to the Motion. *See* Opposition. Thus, Miri complied with Rule 65(b).[3]

Accordingly, the Court finds the Motion is procedurally proper. The Court thus declines to deny the Motion on this basis.

### B. The Court Has Jurisdiction Over This Matter.

Miri argues that the Court has jurisdiction to review the Immigration Judge's "determination that [Miri] poses a flight risk" because it constitutes a mixed question of law and fact. Motion at 8; Reply at 4. Respondents respond that the Court lacks jurisdiction to consider Miri's request because: (1) the Petition is primarily a challenge to the Immigration Court's bond determination at the November 19, 2026 hearing; and (2) Miri must first exhaust administrative remedies by completing the appeal process with the BIA before seeking habeas relief. Opposition at 7-12.

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole." "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Id.* (cleaned up).

Here, Respondents cite to *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018), arguing that Section 1226(e) bars the Court from reviewing the Immigration Judge's bond determination. Opposition at 7. In *Jennings*, the Supreme Court explained that Section 1226(e) precludes a noncitizen "from 'challeng[ing] a "discretionary judgment" by the Attorney General or a "decision" that the Attorney General has made regarding his detention or release.'" 583 U.S. at 295. Following *Jennings*, the Ninth Circuit in *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024) considered *Jennings*' interpretation of Section 1226(e) and clarified that Section 1226(e) "'restricts

---

[3] Respondents also argue that Miri did not comply with Local Rule 7-5. Opposition at 5. Local Rule 7-5 applies to motions "unless otherwise ordered by . . . the [Federal Rules of Civil Procedure], or the Local Rules." C.D. Cal. L.R. 7-2. Local Rule 65-1 and Federal Rule of Civil Procedure 65 provide requirements for motions for temporary restraining orders. As such, Local Rule 7-5 is inapplicable.

jurisdiction only with respect to the executive's exercise of discretion' but that discretionary judgment does not include constitutional claims or questions of law." The Ninth Circuit held that the determination of "dangerousness" (i.e., whether a noncitizen "posed a danger to the community"), is a mixed question of law and fact which is *reviewable* by the district court as a "question of law." *Martinez*, 124 F.4th at 779-80, 783. The *Martinez* Court further found that "the district court's review of the BIA's 'dangerousness' determination is for abuse of discretion." *Id.* Given that the IJ is to consider the same factors when determining flight risk as it is when determining dangerousness, it is clear to this Court that the determination of flight risk is also a mixed question of law and fact which is reviewable by the district court as a question of law.

Here, Miri challenges the constitutionality and sufficiency of the process by which his bond determination was adjudicated. Petition ¶¶ 61-73. Specifically, Miri posits that the immigration judge "identifie[d] no facts, contain[ed] no analysis], prevent[ed] meaningful review, and render[ed Miri's] detention arbitrary and in violation of his rights to due process" when denying Miri bond on the basis that Miri posed a flight risk. Motion at 9. As discussed above, pursuant to *Martinez*, the question of whether a petitioner poses a flight risk is a question of law that is reviewable by the Court. 124 F.4th at 779-80, 783. Therefore, the Court has jurisdiction to review the Immigration Judge's determination under an abuse of discretion standard.[4] *Id.*

Respondents further assert that because Section 1226(e) commits bond determinations to agency discretion by statute, the Court lacks jurisdiction under Sections 1252(a)(5) and 1252(b)(9). Opposition at 7. Miri counters that this Court has jurisdiction under 28 U.S.C. § 2241. Reply at 5-7.

---

[4] The Court notes that Respondents cite to *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) to similarly argue that the Court lacks jurisdiction to review an immigration judge's bond determination. Opposition at 7. In *Rodriguez Diaz*, the Ninth Circuit addressed whether the petitioner was afforded due process under the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) framework. *Rodriguez Diaz*, 53 F.4th at 1209-10. The Ninth Circuit found that the petitioner received procedural safeguards as he received a bond hearing where he was able to present evidence and had a right to seek an additional bond hearing if his circumstances changed. *Id.* at 1209. As a result, the Ninth Circuit found that the second *Mathews* factor— the risk of an erroneous deprivation—weighed against the petitioner. Here, the parties do not dispute whether Miri was deprived of procedural safeguards—a bond hearing. Rather, the parties dispute the *sufficiency* of the Immigration Judge's bond determination. Petition ¶¶ 61-73. That is, whether the Immigration Judge applied the correct legal framework when denying Miri's bond. *Id.* As stated and supported by *Rodriguez Diaz*, the Court has "jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [Miri's] agency proceedings, including any claimed due process violation." 53 F.4th at 1209. Because determining whether the Immigration Judge applied the proper legal framework at Miri's bond hearing is a legal question concerning due process, *Rodriguez Diaz* does not support Respondents' contention that the Court lacks jurisdiction.

For the reasons below, this Court finds that Section 1252 does not bar the Court's review of Miri's Motion.

As this Court has explained *supra*, it lacks authority to enjoin the Government or its subdivisions to "take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, *Aleman Gonzalez*, 596 U.S. at 550. But it may still enjoin the operation of statutory provisions as they apply to an individual noncitizen in removal proceedings. *Id.* Put another way, the Supreme Court has recognized that this Court's jurisdiction to enter individual habeas relief, where appropriate, does not improperly bear on the Government's ability to carry out immigration policy decisions.

As a general matter, in arguing this Court lacks jurisdiction, Respondents appear to inaccurately describe the question posed to this Court. They note, and then justify, that the Court is stripped of jurisdiction over challenges to the commencement of "removal proceedings" or "execute removal orders." Opposition at 7-9. But this case does not challenge the commencement of removal proceedings or execution of a final order—the Petition merely alleges that, when Respondents redetained Miri, they did not afford him the process he was due. Petition at 4. That inquiry is entirely independent of whether the government may commence removal proceedings or execute a removal order.

With this framework in mind, the three statutes that Respondents argue prevent this Court from exercising jurisdiction are inapposite.

Section 1252(g) states that no court may hear a nonimmigrant's case "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against an [undocumented person]." Since Miri's claims "stem from his detention during removal proceedings," Respondents suggest that the Court is deprived of jurisdiction. Opposition at 8. But the Supreme Court has rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims," and has instead endorsed a "much narrower" read that is confined to the "three discrete actions" listed above. *Reno*, 525 U.S. at 482; Reply at 5. With this reading in mind, Section 1252(g) does not apply here. Neither the instant Motion nor the Petition stem from (or challenge) the commencement of proceedings, adjudication of a case, or the execution

of a removal order. Instead, they seek that this Court find that the *manner* in which Miri was denied bond as in violation of his constitutional and statutory protections. Motion at 7-12. Respondents cite no authority for their proposed broad reading of Section 1252(g), particularly the idea that it would prevent *any* claim that had the effect of delaying the government's execution of a final removal order. *See generally* Opposition. And, even if they did, this Court is not inclined to find that this argument would be relevant: Nothing in this Court's ruling today (or Miri's requested relief) prevents Miri's redetention or removal.

Nor do Respondents' other suggested jurisdictional bars operate in this case. Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." And Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." The Ninth Circuit has clarified that these two provisions only "channel judicial review *over final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). And, again, Miri has not requested this Court to review his removal order itself. *See generally* Petition; Motion; Reply at 6. Neither the Petition nor the Motion before this Court contest the basis of the final removal order. Reply at 6-7. Nor does this Court intend to call into question the merits of the Government's reasons, or the basis of the Government's authority, to remove Miri.

In sum, this Court concludes that it has jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate.

**C. Applying the *Winter* factors, Miri Is Entitled to a Temporary Restraining Order.**

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. For the foregoing reasons, Miri has not demonstrated that he is entitled to a temporary restraining order.

Miri advances two grounds upon which a temporary restraining order should be granted. First, Miri argues that his substantive due process rights were violated because the Immigration

11

Judge's bond determination was based on "conjecture." Motion at 9; *see also* Reply at 9. Second, Miri asserts that his procedural due process rights were violated because he "has been deprived of the opportunity to contest his detention before a neutral arbiter." Motion at 11.

The Court addresses these grounds below.

> i.  The first *Winter* factor, likelihood of success on the merits, is not met with respect to both grounds.

Notwithstanding the Court's jurisdiction, the application must be denied because Miri fails to demonstrate that he is likely to succeed on the merits of his claims. "Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted), which "is especially true for constitutional claims," *see Jr. Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

> 1.  *The Immigration Judge's bond determination constitutes an abuse of discretion.*

On his first ground, the parties do not dispute that Miri received post-detention process, including a bond hearing before an immigration judge on November 19, 2026. Dkt. No. 1-2; *see generally* Motion; Opposition; Reply. The question before the Court is whether the Immigration Judge abused its discretion in denying Miri's bond at the bond determination hearing. Miri argues that the Immigration Judge failed to consider the evidence and general criteria for bond when denying Miri's bond. Motion at 9-10. Respondents counter, stating that the Immigration Judge's ruling was based on a proper analysis of the circumstances and exhibits provided. Opposition at 12.

In *Martinez*, the immigration judge evaluated the petitioner's "mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support." 124 F.4th at 780. The immigration judge, however, denied bond, finding petitioner's "two convictions for drug trafficking to be dispositive." *Id.* at 780-81. In evaluating the immigration judge's determination, the Ninth Circuit clarified that "'factual question[s] raised in an application for discretionary relief' remain unreviewable." *Id.* at 782-83 (citing *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024)). As such, factual and credibility determinations, such as the seriousness of a family member's medical

condition, the level of financial support a noncitizen provides, and whether a noncitizen lied on an application form are unreviewable. *Id.* at 783.

An immigration judge, when assessing whether a noncitizen "is a danger to the community or a risk of flight," may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*Id.* An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 784.

Thus, under an abuse of discretion standard, the district court cannot reweigh evidence. *Id.* at 785. Rather, the district court must determine whether the immigration judge "applied the correct legal standard." *Id.* In finding that the immigration judge relied on a totality of the evidence standard, including petitioner's repeated narcotics convictions, to determine that petitioner was a "danger to the community," the Ninth Circuit found that the immigration judge did not abuse its discretion. *Id.*

As stated, Miri received a bond hearing before an immigration judge where he had the opportunity to challenge his detention and the immigration judge subsequently found that the government proved, by clear and convincing evidence that Miri is a flight risk. Miri argues that the Immigration Judge failed to consider the general *Martinez* factors for bond. However, none of these factors are dispositive and an Immigration Judge is not limited to these factors. In fact, an immigration judge's bond determination may rely on a totality of the evidence standard, *Martinez*, 124 F.4th at 785, or "may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the [noncitizen] or the Service," 8 C.F.R. § 1003.19(d).

At the November 19, 2026 bond hearing, Miri was represented by counsel. Dkt. No. 1-2 at 1. During the hearing, Miri and Respondents each presented their respective documentary evidence and

oral arguments. Miri stated that: (1) his Iranian military services were mandatory; (2) "his family ties are significant"; (3) "he's never been a flight risk"; (4) he doesn't have a criminal record; and (5) there is a risk of harm if he returns to Iran. *Id.* at 7-9. In response, Respondents asserted that: (1) Miri made material misrepresentations to obtain a fee waiver and thus, Miri lacks credibility for matters related to work authorization; and (2) Miri's prior Iranian military services support a finding that he "potentially is a danger." *Id.* at 4-5.

After the parties' arguments, the Immigration Judge concluded that there are "too many red flags." *Id.* at 10. The Immigration Judge further decided that there are "a number of [] factors working against the [Miri] as it relates to the flight risk. So the court has denied the request for bond on that basis." *Id.* The Immigration Judge did *not* reach a "determination on danger given the flight finding." *Id.* Importantly, when denying Miri's bond, the Immigration Judge did not set forth the which factors or evidence were relied on. *Id.* Specifically, the Immigration Judge did not discuss weighing the *Martinez* factors or whether the flight risk finding was based on Miri's Iranian military service. *Id.* Notably, Miri's Iranian military service was presented to substantiate a finding that Miri is a danger to the community, *not* a flight risk. *Id.* at 5. And the hearing transcript lacks evidence presented as to Miri being a flight risk. Thus, unlike *Martinez* where the immigration judge "evaluated [petitioner's] mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support," 124 F.4th at 780, the Immigration Judge here did not provide the basis for the bond determination aside from the conclusory statements about "red flags" and "factors working against" Miri, Dkt. No. 1-2 at 10.

The Ninth Circuit, when evaluating Board of Immigration Appeals' decisions under an abuse of discretion standard, have held that a court "abuses its discretion when it fails to 'consider and address in its entirety the evidence submitted by a petitioner' and to 'issue a decision that fully explains the reasons for denying a motion to reopen.'" *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (citing Mohammed v. Gonzales, 400 F.3d 785, 792–93 (9th Cir.2005)); *Carnalla-Munoz v. United States Immigr. and Naturalization Serv.*, 627 F.2d 1004, 1007 (9th Cir. 1980) (declining to find an abuse of discretion where the "immigration judge and the Board have

considered all of the factors upon which petitioners rely"); *Barrera-Leyva v. Immigr. and Naturalization Serv.*, 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "failing to consider all of the relevant factors"); *Hernandez v. Garland*, 52 F.4th 757, 765-66 (9th Cir. 2022) (holding that an abuse of discretion review is limited to ensuring that the agency relied on the appropriate factors).

As described, the Immigration Judge did not explain the reasons for denying Miri's bond. The Immigration Judge did not describe which *Martinez* factors were considered, if any, or what evidence was relied on. As such, the Immigration Judge did not explain the reasons for denying Miri's bond and the record does not establish that the Immigration Judge relied on the appropriate factors. *Id.*

Accordingly, the Court concludes that the Immigration Judge abused its discretion in denying Miri's bond. Miri is thus likely to succeed on the merits

> 2. *Miri has not established that Miri's bond determination was not before a neutral arbiter.*

Miri further argues that his procedural due process rights were violated because "the immigration court system is not an independent adjudicative body." Motion at 11. Respondents do not directly contest this assertion but do generally claim that Miri "does not identify any due process violation." Opposition at 12.

Miri cites to:

(1) the ongoing mass-scale purge of immigration judges perceived as obstacles to DHS' enforcement agenda; (2) the parallel purge and reconstitution of the BIA, resulting in a 97% pro-decision rate; (3) the recruitment and installation of 2 explicitly enforcement-aligned "deportation judges" with dramatically reduced qualifications; (4) EOIR policy directives establishing expectations that adjudications favor the government over noncitizens; and (5) explicit instructions to defy district court rulings that impede DHS's enforcement goals.

*Id.* at 11-23. The Motion, however, does not allege any details or facts that the Immigration Judge before Miri's bond determination failed to consider Miri's bond from a neutral standpoint. The record does not indicate the absence of neutrality, and the Court is not inclined to conclude non-neutrality based on national and general articles discussed by Miri, which do not implicate the

Immigration Judge's conduct in this action. Therefore, Miri's bond determination was before a neutral arbiter and Miri has not established a likelihood of success on this basis.[5]

Taken together, the Court finds that the first *Winter* factors is met as to Miri's challenge of the Immigration Judge's bond determination.

> ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Miri must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Miri has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents do not contest Miri's alleged irreparable harm—detention as a result of a legally inadequate bond determination—other than suggesting that such harm should not excuse Miri from exhausting administrative remedies. Opposition at 11-12; *see* Motion at 22-23; Reply at 9. As stated, Miri did not receive a constitutionally adequate bond hearing under Section 1226(a), resulting in a deprivation of constitutional rights. And "it is well established that the deprivation of constitutional due process rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As a result, Miri's ongoing detention inherently risks his irreparable harm, as it is not clear when he will be processed, released, or removed. Motion at 22-23; Reply at 9-10; *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001).

Thus, as this Court has already found that Miri has a sufficient likelihood of success on the merits of his challenge to the Immigration Judge's bond determination—which implicates Miri's constitutional rights—this Court finds the second *Winter* factor is met.

///

///

---

[5] The Court understands that Miri would have this Court release him without remanding to the IJ for a new bond hearing *because* the IJ is not neutral. Opposition at 11-12, 24-25. Because the Court does not find that this has been established, this Court will remand the matter to the IJ.

        iii.   <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Miri's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Miri's favor. The Court notes that the Government has a strong interest in the enforcement of federal immigration law. However, the Immigration Judge did not explain the basis for denying Miri's bond, resulting in the violation of Miri's constitutional rights to receive an adequate bond hearing under Section 1226(a). Motion at 23. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Given Miri's inadequate bond hearing, Miri's continued detention fails to comply with his constitutional due process rights. Therefore, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

Accordingly, the third and fourth *Winter* factors are met here.

**D. Miri Was Not Required to Exhaust Administrative Remedies.**

Miri and Respondents dispute whether Miri was required to exhaust his administrative remedies by appealing the denial of his bond request to the Board of Immigration Appeals under Ninth Circuit's prudential exhaustion factors laid out in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). The *Puga* factors include: 1) whether agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; 2) whether relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and 3) whether administrative review is likely to allow the agency to correct its own mistakes and preclude the need for judicial review. *Id.*

As to the first factor, Miri argues that because the Board of Immigration Appeals is not a "fact-finding authority" and would only be reviewing "legal error," there is "no further development of the record needed" to resolve the issues. Reply at 8. Respondents counter, stating that given the Board of Immigration Appeals' subject matter expertise, it is the proper forum to generate a "more complete factual record for review." Opposition at 11. Because this action involves a legal question, an "administrative appellate record is not necessary to resolve" Miri's challenge to the Immigration Judge's bond determination. *Hernandez*, 872 F.3d at 989. As such, this factor does not favor exhaustion.

As to the second factor, Miri asserts that because the dispute concerns a matter of law— whether the Immigration Judge conducted a proper bond hearing—resolution by this Court can provide guidance for future detainees. Reply at 8-9. Respondents claim that the dispute is "fact-intensive" and thus, resolution by this Court would not provide guidance. Opposition at 11. Rather, Respondents posit that it would result in "district courts will be overrun with appeals that should be heard by the BIA under the guise of habeas petitions." *Id.* As determined, whether Miri is a flight risk is a mixed question of fact and law. So the Court does not find relaxation of the requirement for administrative review to be fact-intensive. Reply at 8-9. This factor thus weighs against exhaustion.

As to the third factor, Miri concedes that the Board of Immigration Appeals is capable of reviewing his bond determination. Reply at 9. But he states that the exhaustion requirements should be waived due to the prolonged nature of appeals before the Board of Immigration Appeals. *Id.* Thus, requiring Miri to appeal to the Board of Immigration Appeals would result in unreasonable and unconstitutional continued detention. *Id.* In opposition, Respondents emphasize that the Board of Immigration Appeals has the authority to correct the Immigration Judge's errors under 8 C.F.R. § 1003.1(d)(3)(i)-(ii). Opposition at 11-12. The Court agrees that the Board of Immigration Appeals has the ability to review Miri's bond determination and correct any mistakes. But as stated, the Court finds that requiring Miri to go before the Board of Immigration Appeals would prolong his unconstitutional detention, thereby causing irreparable injury. *Hernandez*, 872 F.3d at 987 (holding a court may waive exhaustion requirements if "pursuit of administrative remedies" would lead to "irreparable injury"). Thus, this factor weighs against exhaustion.

Taken together, the Court, in weighing the *Puga* factors, finds that Miri was not required to exhaust administrative remedies given the questions of law at issue. This decision is consistent with *Hernandez*, where the Ninth Circuit waived the exhaustion requirement given that the question before the Court involved a legal challenge. 872 F.3d at 988-89.

Accordingly, Miri's failure to appeal to the Board of Immigration Appeals will not preclude him from obtaining a temporary restraining order.

### E.  A Release Order Is the Appropriate Relief.

Miri requests that the Court order his immediate release from Respondents' custody and enjoin Respondents from redetaining him unless Respondents provide Miri with an adequate Section 1226 bond hearing and find Miri is a flight risk or danger to the community. Motion at 25. Respondents, in their Opposition, do not contest that Miri is entitled to immediate release should the Court determine the merits in Miri's favor. *See generally* Opposition.

First, Miri's prompt release is the remedy that will best return Miri to the status quo and restore his position as it was prior to the detention that Miri contends was in violation of his constitutional and statutory protections. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g.*, *F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at *7 (E.D. Cal. Nov. 4, 2025).

Second, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Motion—to order Respondents to release Miri from custody and not redetain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Miri's detention.

Accordingly, Miri is entitled to a release order.

/ / /

/ / /

## IV.    Conclusion

For the foregoing reasons, the Motion GRANTED IN PART and ORDERS as follows.

1. The Court finds that the Immigration Judge abused its discretion in denying Miri's request for bond at the bond determination hearing.

2. Respondents are ORDERED to release Miri from custody (and return to him his personal belongings) within forty-eight (48) hours,[6] and they may not redetain him without compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231.

3. Respondents are enjoined from relocating Miri outside of the Central District of California pending final resolution of this matter.

4. Respondents shall not impose any release restrictions on Miri, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.[7]

5. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due at 5 PM on Thursday, March 12, 2026. Miri may file a response brief by Tuesday, March 17, 2026.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Monday, March 9, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this temporary restraining order may remain in effect (without converting to a preliminary

---

[6] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

[7] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally'" and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring constitute liberty constraints which do not afford petitioners complete relief.

injunction) through this Court's decision on the preliminary injunction.

    c.  The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

6. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Monday, March 9, 2026.

IT IS SO ORDERED.

Dated: March 5, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge